724 A.2d 241

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOHN WIDMAIER, DEFENDANT–RESPONDENT.

Argued October 14, 1998—Decided March 3, 1999.

478

*Thomas M. Cannavo,* Assistant Prosecutor, argued the cause for appellant (*E. David Millard,* Ocean County Prosecutor, attorney).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

*Matthew W. Reisig* and *David J. Foley, III*, argued the cause for respondent (*Matthew W. Reisig*, attorney).

The opinion of the Court was delivered by

STEIN, J.

This appeal primarily requires us to determine what constitutes a refusal to take a breathalyzer test. When defendant John Widmaier was arrested for driving while intoxicated, the arresting police officer asked him to take a breathalyzer test and informed him that his right to consult with an attorney did not apply to the taking of breath samples. Defendant responded to the officer's request by saying only that he wanted to place a telephone call to his attorney. After the police officer again instructed defendant that his right to consult with an attorney did not apply to the taking of breath samples, defendant agreed to submit to a breathalyzer test but requested that his attorney be present "for calibration purposes." The officer determined that defendant's response constituted a refusal to take the test. Defendant was convicted of driving while intoxicated but acquitted of the charge of refusing to take a breathalyzer test. The primary issue before us is whether, in so responding, defendant "refused" to submit to the breathalyzer test within the meaning of *N.J.S.A.* 39:4-50.4a and in contravention of *N.J.S.A.* 39:4-50.2. We also address whether the double jeopardy clause of the federal and state constitutions bars the State from appealing defendant's acquittal of the refusal charge.

I

At 3:04 a.m. on July 14, 1996, police officer Wayne Walker of the Little Egg Harbor Township Police Department was on duty in a marked patrol car, waiting to make a right-hand turn from Parkertown Drive onto the southbound lane of Route 9. After defendant, who was driving south on Route 9, passed Parkertown Drive, Walker made a right-hand turn onto Route 9 and proceeded on that road a few hundred yards behind defendant's vehicle.

Walker observed defendant negotiate a tight curve, at which time defendant's left front and rear tires crossed the center line of Route 9 into the northbound lane. Walker testified that the area was well illuminated and that he did not observe any traffic or obstacles that might have interfered with defendant's ability to maintain his lane. Walker continued to follow defendant's vehicle on Route 9 and observed defendant again cross the center line. Defendant continued south on Route 9 until, without using his turn indicator lights, he abruptly made a sharp left turn onto Great Bay Boulevard in Tuckerton Borough. Defendant then traveled eastbound on Great Bay Boulevard and made a right turn onto Radio Road. In maneuvering that turn, defendant cut the wheel hard, and his vehicle began to skid toward the guardrail. After defendant appeared to have regained control of the car, his tires lost traction. Again, defendant was able to straighten the vehicle out of the skid. At that point, Walker activated his overhead lights. Defendant pulled over to the side of the road, turned off his engine, and through the open sunroof placed his keys on top of his car.

As Walker approached defendant's vehicle, he smelled alcohol. Walker requested that defendant produce his driver's license, registration, and insurance card. The officer observed defendant fumble as he searched through his wallet for the requested documents; he was able to produce only his driver's license and registration. Asked whether he had had anything to drink that evening, defendant responded in the negative. Defendant spoke in a slow, slurred whisper, his face was flushed, and his eyes were red and watery. Defendant staggered as he complied with the officer's request to step out of his car and walk to the rear of his vehicle. Although the ground surface was flat macadam, defendant stood with his feet wide apart in order to maintain his balance. Defendant assumed a rigid posture but periodically swayed from side to side. Asked by the officer if he had any injuries, defendant replied that he had diabetes.

The officer requested that defendant perform two field sobriety tests. Defendant was unable to perform the first test, which required him to stand for thirty seconds with his feet together, his hands down by his side, his head tilted back, and his eyes closed. Defendant did not perform the second test because he said he did not understand Walker's instructions; Walker had asked defendant to stand on one leg and count up to thirty.

Defendant was arrested for driving while intoxicated, in violation of *N.J.S.A.* 39:4-50, and was informed of his *Miranda* rights as he was placed in the back of Walker's patrol car. Although the rear passenger compartment of the patrol car was separated from the driver's area by plexiglass, Walker noticed that an odor of alcohol was emanating from the passenger compartment.

Defendant was taken to the Little Egg Harbor Township police headquarters. At headquarters, defendant's handcuffs were removed, and defendant was placed in a holding area. Walker then turned on the breathalyzer to warm it up, inserted a video tape into the video camera, and had defendant sit within the camera's view. When the breathalyzer was ready and the camera was filming, Walker read aloud paragraphs one through ten of the "standard statement" prepared by the Director of the Division of Motor Vehicles pursuant to *N.J.S.A.* 39:4-50.2(e):

1. You have been arrested for operating a motor vehicle while under the influence of intoxicating liquor or drugs or with blood alcohol concentration of 0.10% or more.

2. You are required by law to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.

3. A record of the taking of the samples, including the date, time, and results, will be made. Upon your request, a copy of that record will be made available to you.

4. Any warnings previously given to you concerning your right to remain silent and your right to consult with an attorney do not apply to the taking of breath samples and do not give you the right to refuse to give, or to delay giving, samples of your breath for the purposes of making chemical tests to determine the content of alcohol in your blood. You have no legal right to have an attorney, physician, or anyone else present, for the purpose of taking breath samples.

5. After you have provided samples of your breath for chemical testing, you have the right to have a person or physician of your own selection, and at your own expense, take independent samples and conduct independent chemical tests of your breath, urine, or blood.

6. If you refuse to provide samples of your breath you will be issued a separate summons for this refusal.

7. According to *N.J.S.A.* 39:4–50.4a, if a court of law finds you guilty of refusing to submit to chemical tests of your breath, then your license to operate a motor vehicle will be revoked for a period of six months. If your refusal conviction is in connection with a second offense under this statute, your license to operate a motor vehicle will be revoked for a period of two years. If your refusal conviction is in connection with a third or subsequent offense under this statute, your license to operate a motor vehicle will be revoked for a period of ten years. The Court will also fine you a sum of between [sic] $250 and $500 for your refusal conviction.

8. Any license suspension or revocation for refusal conviction will be independent of any license suspension or revocation imposed for any related offense.

9. If you are convicted of refusing to submit to chemical tests of your breath, you will be referred by the Court to an Intoxicated Driver Resource Center and you will be required to satisfy the requirements of that center in the same manner as if you had been convicted of a violation of *N.J.S.A.* 39:4–50, or you will be subject to penalties for your failure to do so.

10. I repeat, you are required by law to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Now, will you submit to the samples of your breath?

Defendant's reply to the above-quoted statement was, "Sir, I would like you to call Francis Xavier Moore, my attorney."

The instructions accompanying the standard statement indicate that if the person remains silent, states that he has the right to remain silent, or says he wishes to consult an attorney, physician, or other person, the police officer shall read the following additional statement:

I have previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney do not apply to the taking of breath samples and do not give you a right to refuse to give, or delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. If you (1) do not respond to my question about submitting breath samples; or (2) tell me that you refuse to answer this question because you have a right to remain silent or first wish to consult with an attorney, physician or any other person; or (3) tell me that you will not submit breath samples because you have a right to remain silent or first wish to consult with an attorney, physician, or any other person, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your

breath for the purpose of making chemical tests to determine the content of alcohol in your blood.

Once again, I ask you, will you submit to giving samples of your breath?

Walker read the above statement to defendant, who responded by saying, "I agree to the samples of my breath, but I would like my attorney present for calibration purposes." Walker again informed defendant that he did not have the right to have his attorney present for the breathalyzer test. Defendant remained silent, and Walker did not offer the breathalyzer mouthpiece to defendant. Walker again informed defendant of his *Miranda* rights, and defendant responded simply by saying that he understood. Walker asked defendant to perform physical coordination tests, and defendant refused to do so. Walker then issued defendant summonses for driving while under the influence of alcohol (DWI), failure to maintain a lane, and refusal to submit to a breathalyzer test, in contravention of *N.J.S.A.* 39:4–50, *N.J.S.A.* 39:4–88(b), and *N.J.S.A.* 39:4–50.2, respectively.

At trial, the Municipal Court merged the charge of failure to maintain a lane into the DWI charge and found defendant guilty of DWI. For that offense, defendant was assessed fines, penalties, and court costs in addition to mandatory attendance for twelve hours at the Intoxicated Driver Resource Center (IDRC) and revocation of his driving privileges for six months. With regard to the refusal charge, however, the court was not satisfied that defendant had refused to submit to a breathalyzer test. The court determined that defendant's statement, "I agree to the samples of my breath, but I would like my attorney present for calibration purposes," was not a refusal.

Both defendant and the State appealed to the Law Division, which, pursuant to *Rule* 3:23–8(a), held a trial *de novo* on the record below. The court held, as a preliminary matter, that the State was not barred by double jeopardy principles from appealing defendant's acquittal on the refusal charge because such a charge is civil and not criminal. The court found that the State proved, beyond a reasonable doubt, that defendant was guilty of the DWI offense and upheld the penalties imposed by the trial court. On

the refusal charge, however, the court found that defendant did not refuse to take the breathalyzer test and that defendant did not knowingly subject himself to the penalties for refusal mandated by *N.J.S.A.* 39:4–50.4a. The court suggested that Officer Walker could have done more to make defendant understand that his unequivocal consent was needed in order for the officer to proceed with the breathalyzer test and that the test was mandatory.

Both parties appealed to the Appellate Division, which affirmed defendant's DWI conviction and upheld the dismissal of the refusal charge. In an unpublished opinion, that court held that "whether defendant's responses amounted to a consent or not was an issue for the trier of fact," and concluded that the trial court's findings were adequately supported by the evidence. The court found it unnecessary to consider defendant's argument that the State's appeal placed defendant in double jeopardy "because the penalties for a conviction for refusal to consent are substantially the same as the penalties for a conviction of driving while under the influence of alcohol." Citing *State v. Todaro*, 242 *N.J.Super.* 177, 180, 576 *A*.2d 307 (App.Div.1990), the Appellate Division panel noted that the Legislature intended a refusal trial to be a civil proceeding, and therefore not subject to double jeopardy limitations.

The State filed a petition for certification, raising two issues for our review: (1) whether a person arrested for DWI may be acquitted of refusal to submit to a breathalyzer test without unequivocally consenting to the test; and (2) whether a person arrested for DWI has the right to consult with an attorney prior to providing breath samples. We granted certification. 153 *N.J.* 213, 708 *A*.2d 64 (1998). Although defendant did not file a cross-petition for certification, defendant argued before us that principles of double jeopardy bar the State from appealing his acquittal of the refusal charge. The Attorney General, as *amicus curiae*, urges us to hold that double jeopardy principles do not preclude the State from appealing refusal acquittals because the refusal statute is civil, not criminal, in nature.

## II

### A

■ New Jersey's DWI statutes were enacted "to curb the senseless havoc and destruction caused by intoxicated drivers." *State v. Tischio*, 107 *N.J.* 504, 512, 527 *A.*2d 388 (1987). To facilitate effective enforcement of the DWI statutes, the Legislature passed the "Implied Consent Law," *N.J.S.A.* 39:4–50.2, which provides that any person who is arrested for driving while under the influence of alcohol has an affirmative obligation to submit to a breathalyzer test. More specifically, the Implied Consent Law provides that any person who operates a motor vehicle on a public or quasi-public road in New Jersey "shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of the alcohol in his blood." *Ibid.* The statute's purpose is to encourage motorists suspected of driving under the influence to submit to breathalyzer tests. *State v. Wright*, 107 *N.J.* 488, 499, 527 *A.*2d 379 (1987).

■ Breath samples are a nontestimonial form of evidence. *State v. Macuk*, 57 *N.J.* 1, 14, 268 *A.*2d 1 (1970). Accordingly, a defendant does not have a Fifth Amendment right to consult with an attorney before taking the test, nor does a defendant have a right to have an attorney present when the test is performed. *State v. Leavitt*, 107 *N.J.* 534, 536, 540, 527 *A.*2d 403 (1987); *see also Macuk, supra*, 57 *N.J.* at 16, 268 *A.*2d 1 (holding that police officers are not required to give defendants *Miranda* warnings prior to administration of breathalyzer test because "fundamental reason for the *Miranda* rules is just not present"). Additionally, because breath sample evidence "is evanescent and may disappear in a few hours," *State v. Dyal*, 97 *N.J.* 229, 239, 478 *A.*2d 390 (1984), police must administer the breathalyzer test within a reasonable time after the arrest in order to obtain an accurate reading. *Leavitt, supra*, 107 *N.J.* at 541, 527 *A.*2d 403; *see also State v. Pandoli*, 109 *N.J.Super.* 1, 4, 262 *A.*2d 41 (App.Div.1970) (noting "rapidity with which the passage of time and physiological

processes tend to eliminate evidence of ingested alcohol in the system"); *State v. Corrado,* 184 *N.J.Super.* 561, 568, 446 *A.*2d 1229 (App.Div.1982) (holding one-hour delay in consenting to take breathalyzer test violated Implied Consent Law).

■ The important public policy underlying the Implied Consent Law and the physiological practicalities requiring the performance of breathalyzer tests soon after the suspect's traffic stop have led courts to hold that "anything substantially short of an unconditional, unequivocal assent to an officer's request that the arrested motorist take the breathalyzer test constitutes a refusal to do so." *State v. Bernhardt,* 245 *N.J.Super.* 210, 219, 584 *A.*2d 854 (App. Div.) (quoting *Corrado, supra,* 184 *N.J.Super.* at 569, 446 *A.*2d 1229), *certif. denied,* 126 *N.J.* 323, 598 *A.*2d 883 (1991); *see also Corrado, supra,* 184 *N.J.Super.* at 569, 446 *A.*2d 1229 ("The occasion is not one for debate, maneuver or negotiation, but rather .a simple 'yes' or 'no' to the officer's request.") (quoting *Pandoli, supra,* 109 *N.J.Super.* at 4, 262 *A.*2d 41). Furthermore, "[o]nce the defendant says anything except an unequivocal 'yes' to the officer's request after the officer has informed the defendant of the consequences of refusal, the defendant cannot legally cure the refusal." *Bernhardt, supra,* 245 *N.J.Super.* at 219, 584 *A.*2d 854. In adopting the unequivocal consent rule, courts have acknowledged that delays in performing breathalyzer tests would lead to inaccurate results and would eviscerate the very purpose of the DWI statutes. *See, e.g., Corrado, supra,* 184 *N.J.Super.* at 569, 446 *A.*2d 1229 (holding that "policy of our implied consent law would be violated" if defendant was allowed to initially refuse, and later consent).

The Legislature also has sought to ensure that the Implied Consent Law is a strong disincentive to driving while intoxicated. Although defendants will not physically be forced to take a breathalyzer test, *see State v. Sherwin,* 236 *N.J.Super.* 510, 516–17, 566 *A.*2d 536 (App.Div.1989) (holding that police officers do not have to "set up the breathalyzer, lead the suspect to the machine and hold the hose to his mouth"), the consequences of a person's

failure to consent are not insignificant. Under the refusal statute, *N.J.S.A.* 39:4–50.4a, the mandatory sentence for a first conviction is revocation of driving privileges for six months, a fine between $250 and $500, and attendance at an IDRC. For second and third refusal convictions, the penalty is revocation of driving privileges for two and ten years, respectively, in addition to fines and attendance at an IDRC. *Ibid.*

The Legislature has required that a standard statement be read to any defendant subjected to the test. *N.J.S.A.* 39:4–50.2(e). By doing so, the Legislature has provided a procedural safeguard to help ensure that defendants understand the mandatory nature of the breathalyzer test, their limited rights to counsel for purposes of the test, and the need for unequivocal, affirmative consent.

## B

### 1.

Although the question is not before us, no cross-petition for certification having been filed by defendant, we elect to address the question whether the State's appeal is barred by double jeopardy because its resolution is critical to this appeal. We observe, however, that that issue appears to be one of limited significance because appeals from acquittals of prosecutions for refusal to submit to a breathalyzer test are quite rare. (The Judiciary's Automated Traffic System/Automated Complaint System that includes data from all 537 of the State's municipal courts reveals that from January 1, 1998 to December 31, 1998, only eight appeals were taken from approximately 2200 acquittals in breathalyzer refusal cases.) We also note that the issue was thoroughly briefed before us by the Attorney General and argued by counsel.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and

multiple punishments for the same offense. *North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L. Ed.*2d 656, 664–65 (1969), *overruled on other grounds, Alabama v. Smith,* 490 *U.S.* 794, 109 *S.Ct.* 2201, 104 *L. Ed.*2d 865 (1989); *State v. Womack,* 145 *N.J.* 576, 582, 679 *A.*2d 606, *cert. denied,* 519 *U.S.* 1011, 117 *S.Ct.* 517, 136 *L. Ed.*2d 405 (1996). The constitutional guarantees of the Double Jeopardy Clause apply to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 *U.S.* 784, 794, 89 *S.Ct.* 2056, 2062, 23 *L. Ed.*2d 707, 716 (1969). Protections against double jeopardy under the New Jersey Constitution, *New Jersey Const.* art. I, ¶ 11, consistently have been interpreted by this Court to be co-extensive with the protections afforded by the federal clause. *State v. Black,* 153 *N.J.* 438, 443, 710 *A.*2d 428 (1998) (citing *Womack, supra,* 145 *N.J.* at 582, 679 *A.*2d 606; *State v. Koedatich,* 118 *N.J.* 513, 518, 572 *A.*2d 622 (1990), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L. Ed.*2d 803 (1989)). Under both the state and federal double jeopardy clauses, an appeal from an acquittal is impermissible if "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.,* 430 *U.S.* 564, 571, 97 *S.Ct.* 1349, 1354–55, 51 *L. Ed.*2d 642, 651 (1977). Even if a trial court acquits a defendant on an "egregiously erroneous foundation," *Fong Foo v. United States,* 369 *U.S.* 141, 143, 82 *S.Ct.* 671, 672, 7 *L. Ed.*2d 629, 631 (1962), the acquittal cannot be appealed by the government because the "verdict of acquittal was final and could not be reviewed … without putting [defendant] twice in jeopardy." *Ibid.* (quoting *United States v. Ball,* 163 *U.S.* 662, 671, 16 *S.Ct.* 1192, 1195, 41 *L. Ed.* 300, 303 (1896)).

In certain circumstances, *i.e.,* "[w]here the proceedings against an accused are terminated during trial on a basis unrelated to factual guilt or innocence, the State may appeal from a ruling of the trial court in favor of the defendant without offending the principles expressed in the double jeopardy clause." *State v.*

*Barnes,* 84 *N.J.* 362, 371, 420 *A.*2d 303 (1980). Under that rule, double jeopardy considerations are not offended provided a successful appeal by the State would not result in a retrial of defendant. *United States v. Wilson,* 420 *U.S.* 332, 336, 95 *S.Ct.* 1013, 1018, 43 *L. Ed.*2d 232, 237 (1975) (holding that "the constitutional protection against Government appeals attaches only where there is a danger of subjecting the defendant to a second trial for the same offense"). However, such an appeal is allowed only if the factfinder has not yet made a determination of the guilt or innocence of defendant. *United States v. Maker,* 751 *F.*2d 614, 621 (3d Cir.1984), *cert. denied,* 472 *U.S.* 1017, 105 *S.Ct.* 3479, 87 *L. Ed.*2d 614 (1985).

Generally, courts have limited the government's right to appeal to situations in which the trial court declared a mistrial or ordered a judgment notwithstanding the verdict, a pretrial dismissal, or a dismissal based on procedural, not evidentiary, grounds. *See, e.g., United States v. Scott,* 437 *U.S.* 82, 93, 98 *S.Ct.* 2187, 2195, 57 *L. Ed.*2d 65, 75 (1978) ("Where ... defendant successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution."); *Serfass v. United States,* 420 *U.S.* 377, 391–92, 95 *S.Ct.* 1055, 1064, 43 *L. Ed.*2d 265, 276 (1975) (holding that Double Jeopardy Clause did not bar appeal by government from pretrial order dismissing indictment because jeopardy had not yet attached as petitioner had not yet been put to trial before factfinder); *State v. Kleinwaks,* 68 *N.J.* 328, 334–35, 345 *A.*2d 793 (1975) (holding Double Jeopardy Clause did not bar State from appealing judgment of acquittal entered after jury returned guilty verdict); *State v. Sims,* 65 *N.J.* 359, 371, 322 *A.*2d 809 (1974) (holding that reversal of order for new trial did not put defendant twice in jeopardy because that ruling "place[d] him in the precise position he was in after the verdict in his first trial"); *State v. Resorts Int'l Hotel, Inc.,* 173 *N.J.Super.* 290, 299, 414 *A.*2d 269 (App.Div.) (holding that double jeopardy did not preclude State's appeal from dismissal of complaint against defendant because ground for dismissal was lack of jurisdiction), *certif. denied,* 84 *N.J.* 466, 420

A.2d 1294 (1980); *cf. Sanabria v. United States*, 437 *U.S.* 54, 69, 98 *S.Ct.* 2170, 2181, 57 *L. Ed.*2d 43, 57 (1978) (holding defendant's "judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error") (citing *Martin Linen Supply, supra,* 430 *U.S.* at 571, 97 *S.Ct.* at 1354, 51 *L. Ed.*2d at 651); *State v. Ortiz,* 202 *N.J.Super.* 233, 240, 494 *A.*2d 822 (App.Div.) (holding that State was not entitled to appeal judgment of acquittal rendered on grounds of insufficient evidence), *certif. denied,* 102 *N.J.* 300, 508 *A.*2d 187 (1985).

2.

■ The Double Jeopardy Clause's prohibition against repeated attempts to obtain a conviction against a defendant after a defendant has been acquitted applies to acquittals of criminal and quasi-criminal charges. *State v. Gerstmann,* 198 *N.J.Super.* 175, 179, 486 *A.*2d 912 (App.Div.1985). No such prohibition attaches in civil actions. *Merin v. Maglaki,* 126 *N.J.* 430, 440, 599 *A.*2d 1256 (1992).

■ The State and defendant dispute whether a prosecution for a violation of the Implied Consent Law is civil or criminal in nature. In deciding whether a particular statute is civil or criminal, courts must determine whether the sanctions imposed for a violation are tantamount to a criminal penalty. *Black, supra,* 153 *N.J.* at 445, 710 *A.*2d 428 (citing *Hudson v. United States,* 522 *U.S.* 93, —— – ——, 118 *S.Ct.* 488, 493–94, 139 *L. Ed.*2d 450, 458–59 (1997)). Although discerning whether a statute is civil or criminal initially is a matter of statutory construction, *Hudson, supra,* 522 *U.S.* at ——, 118 *S.Ct.* at 493, 139 *L. Ed.*2d at 459, for double jeopardy purposes the legislature's description of a sanction as civil does not foreclose the possibility that it has a punitive character. *Department of Revenue v. Kurth Ranch,* 511 *U.S.* 767, 777, 114 *S.Ct.* 1937, 1945, 128 *L. Ed.*2d 767, 777 (1994). Where the legislature has expressly or impliedly indicated an intention to establish a civil penalty, we must " 'inquire[ ] further whether the statutory scheme [i]s so punitive either in purpose or effect' as to

'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Black, supra,* 153 *N.J.* at 445–46, 710 *A.*2d 428 (quoting *Hudson, supra,* 522 *U.S.* at ——, 118 *S.Ct.* at 493, 139 *L. Ed.*2d at 459) (citations omitted).

When there are ambiguities concerning the nature of a statute, the following factors are helpful in determining whether the statutory scheme is, in its purpose or effect, punitive and thereby criminal, or remedial and thereby civil: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction historically has been regarded as punishment; (3) whether the sanction is triggered only upon a finding of scienter; (4) whether the sanction's operation will promote traditional aims of punishment, *i.e.,* retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether there is an alternative purpose to which the sanction may rationally be connected; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Hudson, supra,* 522 *U.S.* at ——, 118 *S.Ct.* at 493, 139 *L. Ed.*2d at 459 (citing *Kennedy v. Mendoza–Martinez,* 372 *U.S.* 144, 168–69, 83 *S.Ct.* 554, 567–68, 9 *L. Ed.*2d 644, 661 (1963)). In applying those factors, a court must evaluate the statute on its face, *Kennedy, supra,* 372 *U.S.* at 169, 83 *S.Ct.* at 567–68, 9 *L. Ed.*2d at 661, and may override legislative classification of a statute as "civil" only by "the clearest proof," *Hudson, supra,* 522 *U.S.* at ——, 118 *S.Ct.* at 493, 139 *L. Ed.*2d at 459 (quoting *United States v. Ward,* 448 *U.S.* 242, 249, 100 *S.Ct.* 2636, 2641, 65 *L. Ed.*2d 742, 749 (1980)).

We note that the former double jeopardy test, set forth in *United States v. Halper,* 490 *U.S.* 435, 448, 109 *S.Ct.* 1892, 1901–02, 104 *L. Ed.*2d 487, 501 (1989), provided that "a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." The *Hudson* Court rejected the *Halper* test, noting that "[i]f a sanction must be 'solely' remedial (*i.e.,* entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." *Hudson, supra,* 522

U.S. at ——, 118 *S.Ct.* at 495, 139 *L. Ed.*2d at 461. Therefore, *Hudson* "reestablished the traditional rule that whether a sanction is subject to double jeopardy restraints depends upon whether that sanction essentially constitutes a criminal penalty." *Black, supra,* 153 *N.J.* at 445, 710 *A.*2d 428.

### 3.

Our courts have long held that prosecutions for "a violation of [motor vehicle law] provisions results in a prosecution of a quasi-criminal action." *State v. Cooper,* 129 *N.J.Super.* 229, 231, 322 *A.*2d 836 (App.Div.), *certif. denied,* 66 *N.J.* 329, 331 *A.*2d 28 (1974); *see also State v. Selzer,* 57 *N.J.Super.* 327, 330, 154 *A.*2d 669 (Law Div.1959) ("It has been firmly established by the decisions in this State that motor vehicle or traffic violations, unless specifically designated otherwise, are quasi-criminal in character."); *State v. Rowe,* 116 *N.J.L.* 48, 51, 181 *A.* 706 (1935) ("It is . . . the settled law that our Motor Vehicle Act is a penal statute; it is quasi criminal in nature.") (citation omitted). Quasi-criminal offenses are "a class of offenses against the public 'which have not been declared crimes, but wrongful against the general or local public which it is proper should be repressed or punished by forfeitures and penalties.' " *State v. Laird,* 25 *N.J.* 298, 302–03, 135 *A.*2d 859 (1957) (quoting *Wiggins v. City of Chicago,* 68 *Ill.* 372 (1873)). Courts have characterized traffic offenses as quasi-criminal "to satisfy the requirements of fundamental fairness and essential justice to the accused." *Vickey v. Nessler,* 230 *N.J.Super.* 141, 149, 553 *A.*2d 34 (1989); *see also Laird, supra,* 25 *N.J.* at 303, 135 *A.*2d 859 (holding that classification of crimes as quasi-criminal "is in no sense illusory . . . [as] it has reference to the safeguards inherent in the very nature of the offense, the punitive quality that characterizes the proceeding, and the requirement of fundamental fairness and essential justice"). It follows that "[a] defendant in a prosecution alleging violation of one of the quasi-criminal offenses enumerated in the Motor Vehicle Act is . . . entitled to the basic rights afforded to criminal defendants. . . ." *State v. Feintuch,* 150 *N.J.Super.* 414, 422, 375 *A.*2d 1223 (App. Div.1977) (citing *State v. Emery,* 27 *N.J.* 348, 353, 142 *A.*2d 874

(1958); *Cooper, supra,* 129 *N.J.Super.* at 231, 322 *A.*2d 836), *appeal dismissed,* 75 *N.J.* 606, 384 *A.*2d 836 (1978); *see also State v. Francis,* 67 *N.J.Super.* 377, 381, 170 *A.*2d 476 (App.Div.1961) (holding that defendants charged with quasi-criminal offenses "are entitled to the same protection[s] as are normally accorded one accused of a criminal offense"). However, until 1983, our case law was unclear concerning whether principles of double jeopardy are applicable to motor vehicle prosecutions. *State v. Dively,* 92 *N.J.* 573, 584, 458 *A.*2d 502 (1983). *Dively* expressly held that "Motor Vehicle violations tried in municipal courts are within the category of offenses subject to the Double Jeopardy Clause." *Id.* at 586, 458 *A.*2d 502.

New Jersey courts generally have classified a refusal to take a breathalyzer test as a civil matter, thereby differentiating it from other traffic offenses. *Wright,* 107 *N.J.* 488, 503, 527 *A.*2d 379 (1987) (holding that "breathalyzer refusal hearing has always been treated as a civil matter"); *State v. DiSomma,* 262 *N.J.Super.* 375, 380, 621 *A.*2d 55 (App.Div.1993) (holding that "violation of *N.J.S.A.* 39:4–50.4a . . . is civil in character"); *Todaro, supra,* 242 *N.J.Super.* at 179, 576 *A.*2d 307 ("[I]t is well settled in New Jersey that while drunk driving is a quasi-criminal offense, '[a] breathalyzer refusal hearing has always been treated as a civil matter.'") (quoting *Wright, supra,* 107 *N.J.* at 503, 527 *A.*2d 379). *But see Bernhardt, supra,* 245 *N.J.Super.* at 219, 584 *A.*2d 854 (stating that "[p]rosecutions for drunk driving and for failure to give a breath sample are quasi-criminal proceedings").

Courts have cited the preponderance of the evidence standard of proof as a reason to classify the refusal statute as civil. *See N.J.S.A.* 39:4–50.4a ("The municipal court shall determine by a *preponderance of the evidence* whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while the person was under the influence of intoxicating liquor . . . and whether he refused to submit to the test upon request of the officer.") (emphasis added); *see also Wright, supra,* 107 *N.J.* at 503, 527 *A.*2d 379 (noting

preponderance of evidence standard of proof of refusal statute); *DiSomma, supra,* 262 *N.J.Super.* at 380–81, 621 *A.*2d 55 (finding violation of *N.J.S.A.* 39:4–50.4a to be "civil in character, requiring only proof by preponderance of the evidence").

Courts have also noted that the refusal statute's legislative history reveals that the statute was intended to be a civil counterpart to the quasi-criminal intoxicated driving offense. Prior to 1981, refusal cases were handled administratively by the Division of Motor Vehicles in accordance with the now-repealed *N.J.S.A.* 39:4–50.4. *Todaro, supra,* 242 *N.J.Super.* at 180, 576 *A.*2d 307. The successor statute, *N.J.S.A.* 39:4–50.4a, placed jurisdiction over refusal cases in the municipal courts. *L.* 1981, *c.* 512, § 2. Although the bill originally required proof of the elements of refusal beyond a reasonable doubt, the Assembly acquiesced to Governor Byrne's recommendation that "the preponderance of the evidence standard currently utilized in the administrative hearing of this type of case be retained" because "the beyond a reasonable doubt standard of proof is an unusually harsh burden of proof in a non-criminal case." *Wright, supra,* 107 *N.J.* at 503 n. 8, 527 *A.*2d 379 (quoting Report of the Governor to the Assembly re: Assembly Bill No. 2293 (Jan. 4, 1982)).

Notwithstanding the civil standard of proof, we must adhere to the principle that the characterization of the refusal statute for double jeopardy purposes depends on whether the sanction essentially constitutes a criminal penalty. *Black, supra,* 153 *N.J.* at 445, 710 *A.*2d 428. As noted, a first conviction under the refusal statute results in a mandatory revocation of driving privileges for six months, a fine between $250 and $500, and attendance at an IDRC; second and third refusal convictions result in mandatory revocations of driving privileges for two and ten years, respectively, in addition to fines and attendance at IDRC. Those penalties are as severe as the penalties for typical motor vehicle violations that we categorize as quasi-criminal offenses and, in the case of repeat offenders, more severe.

III

A

We hold that defendant failed to consent to a breathalyzer test, and thereby endorse the principle that "anything substantially short of an unconditional, unequivocal assent to an officer's request that the arrested motorist take the breathalyzer test constitutes a refusal to do so." *Bernhardt, supra,* 245 *N.J.Super.* at 219, 584 *A.*2d 854. A breathalyzer test is not an occasion "for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." *Ibid.* (quoting *Corrado, supra,* 184 *N.J.Super.* at 569, 446 *A.*2d 1229 (quoting *Pandoli, supra,* 109 *N.J.Super.* at 4, 262 *A.*2d 41)). Any other result would undermine law enforcement's ability to remove intoxicated drivers from the roadways.

Officer Walker followed, to the letter, the proper procedures for informing defendant of his obligation to submit to a breathalyzer test. Upon defendant's arrest, Walker informed defendant of his *Miranda* rights. In requesting defendant to submit to a breathalyzer test, Walker read paragraphs one through ten of the standard statement required by *N.J.S.A.* 39:4–50.2(e). When defendant responded to Walker's request by stating, "Sir, I would like you to call Francis Xavier Moore, my attorney," Walker read the second part of the standard statement. By doing so, Walker again informed defendant that he had no right to consult with an attorney before giving breath samples, that he had no right to refuse to take a breathalyzer test, and that he would be charged with refusing to submit to taking samples if he told the officer that he would not submit breath samples because he first wished to consult with an attorney. Defendant failed to heed the officer's warning. Instead, he responded by saying, "I agree to the samples of my breath, but I would like my attorney present for calibration purposes." We deem such a response to be conditional, not rising to the level of the unequivocal consent needed to proceed with a breathalyzer test.

Because a police officer has no duty to bring a defendant to the breathalyzer machine, instruct him to blow into it, and wait for defendant to protest in order to determine that the defendant has refused, *Sherwin, supra,* 236 *N.J.Super.* at 516–17, 566 *A.*2d 536, we conclude that Walker provided defendant with adequate opportunities to take the breathalyzer test. Defendant's conditional and ambiguous response appropriately was understood by the officer to be a refusal.

We emphasize that a defendant's subjective intent is irrelevant in determining whether the defendant's responses to the officer constitute a refusal to take the test. A suspect's conditional or ambiguous response to a police officer's final demand to submit to the breathalyzer test constitutes a violation of the refusal statute whether or not the suspect intended to refuse to take the test. We also note that a motorist has no right to delay a breathalyzer test. Because granting a request to consult with counsel would delay the administration of the test and would affect the results, *Pandoli, supra,* 109 *N.J.Super.* at 4, 262 *A.*2d 41, voicing a mere "preference" to have an attorney present, as defendant in the instant case argues he did, is a delay tactic that cannot be indulged.

Although we are fully persuaded that defendant failed to consent to the breathalyzer test, we note that it may be in the interest of both law enforcement officials and the driving public to amend the standard statement in order to eliminate any ambiguity concerning a motorist's intent to submit to the test. We would recommend a modification of the instructions accompanying the statement that directs the police officer, in the event the motorist's response to the standard statement is conditional in any respect whatsoever, to then inform the motorist that the prior response is unacceptable and that, unless the motorist consents unconditionally to the taking of breath samples, a summons alleging violation of the breathalyzer statute will issue. Accordingly, we urge the Director of the Division of Motor Vehicles to consider revising the standard statement to further ensure that suspects understand

that an ambiguous or conditional answer to a request to submit to a breathalyzer test will be deemed a refusal.

In addition, we note that the second sentence of the supplement to the standard statement that, in its present form, lists three examples of conduct by a subject that will result in issuance of a summons, *supra* at 484–85, 724 *A*.2d at 246, may be difficult to understand. A simpler version would warn the suspect that if he or she does not agree to provide breath samples, a summons will issue. We encourage the Director to simplify and clarify the supplement to the standard statement.

## B

We are persuaded that, despite the use of a civil standard of proof, the consequences of a violation of the Implied Consent Law are sufficiently severe as to be tantamount to a criminal penalty. *See Hudson, supra,* 522 *U.S.* at ——––——, 118 *S.Ct.* at 493–94, 139 *L. Ed.*2d at 458–59; *Black, supra,* 153 *N.J.* at 445, 710 *A.*2d 428. Although a first conviction under the refusal statute results in a mandatory six-month license revocation, as well as a fine between $250 and $500, a second refusal conviction results in fines plus a mandatory two-year license revocation. A third violation of the statute can subject a person to a ten-year period of license revocation, as well as additional fines and penalties. *See N.J.S.A.* 39:4–50.4a. Focusing on the more relevant criteria among those used to determine if a sanction should be characterized as a criminal penalty, we note that the long-term license revocations imposed on repeat violators of the refusal statute achieve both retribution and deterrence, traditional aims of punishment, and in its most severe application—a ten year revocation—the statutory sanction significantly exceeds the remedial purpose assigned to it by the State. See *Mendoza–Martinez, supra,* 372 *U.S.* at 168–69, 83 *S.Ct.* at 567–68, 9 *L. Ed.*2d at 661.

We also note that, except for the jail sentences authorized by the DWI statutes, *N.J.S.A.* 39:4–50, the sanctions for violating the refusal statute are substantially similar to those imposed for

violation of the DWI statute. Moreover, although we have determined to treat motor vehicle violations as quasi-criminal for double jeopardy purposes, *Dively, supra,* 92 *N.J.* at 586, 458 *A.*2d 502, penalties authorized for violation of the refusal statute are more severe than those generally imposed on violations of other motor vehicle statutes. We therefore hold that, at least for double jeopardy purposes under the United States and New Jersey's Constitution, a violation of the Implied Consent Law and a prosecution under the refusal statute must be regarded as quasi-criminal in nature. *Accord Bernhardt, supra,* 245 *N.J.Super.* at 219, 584 *A.*2d 854.

We further hold that the Municipal Court's determination that defendant did not refuse to take the breathalyzer test was, erroneous or not, a resolution based at least in part on factual findings. *See Martin Linen Supply, supra,* 430 *U.S.* at 571, 97 *S.Ct.* at 1354–55, 51 *L. Ed.*2d at 651 (holding that double jeopardy principles prevent the government from appealing an acquittal if "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged"); *Fong Foo, supra,* 369 *U.S.* at 143, 82 *S.Ct.* at 672, 7 *L. Ed.*2d at 631 (holding that although acquittal was based on "egregiously erroneous foundation," it "could not be reviewed without putting defendant twice in jeopardy"); *see also Scott, supra,* 437 *U.S.* at 91, 98 *S.Ct.* at 2194, 57 *L. Ed.*2d at 74 ("A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by reversal."); *Sanabria, supra,* 437 *U.S.* at 64, 98 *S.Ct.* at 2179, 57 *L. Ed.*2d at 54 ("Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.").

After a full trial, the Municipal Court clearly made findings of fact on the refusal issue, observing that the State's case "leaves reason for reasonable doubt" and concluding that "giving all

reasonable inferences to the defendant at this point, at the end of the case, I do not find by a preponderance of the evidence that that in fact constituted a refusal." Although we find that ruling to be legally incorrect, we have no doubt that the Municipal Court's judgment of acquittal incorporated both its review of the factual testimony presented as well as its conclusions of law. Therefore, we are constrained to hold that the State's subsequent appeals to the Law Division, Appellate Division, and this Court are barred by double jeopardy principles. The defendant's conviction for driving while intoxicated remains undisturbed. As noted, based on that conviction defendant's license was suspended for six months and appropriate fines and penalties were imposed.

IV

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.