782 A.2d 950 (2001)
344 N.J. Super. 521
STATE of New Jersey, Plaintiff-Respondent,
v.
Terrance CARLSON and Jeanette Leehr, Defendants-Respondents.
Irving D. Isko, Appellant.
Superior Court of New Jersey, Appellate Division.
Argued telephonically September 21, 2001.
Decided October 29, 2001.
*951 David Schechner, West Orange, argued the cause for appellant Irving D. Isko (Schechner & Targan, attorneys; Mr. Schechner, on the brief).
David L. Epstein, Roseland, argued the cause for respondents Terrance Carlson and Jeanette Leehr (Post, Polak, Goodsell & MacNeill, attorneys; Mr. Epstein, of counsel; Mr. Epstein and Joseph Tripodi, on the brief).
Fred Semrau argued the cause for respondent Borough of Mendham (Jansen, Bucco & DeBona, attorneys; Mr. Semrau, on the brief).
Before Judges STERN and EICHEN.
The opinion of the court was delivered by STERN, P.J.A.D.
Irving D. Isko, designated "a person interested in the prosecution," purports to appeal from an order of June 30, 2000, denying his request for appointment as "Special Municipal Prosecutor" to appeal the defendants' successful disposition of their municipal appeal to the Law Division and "reversal" of the municipal convictions. Isko argues that "the application to intervene as private prosecutor met all the requirements" of law and should have been granted; its denial constituted "an abuse of discretion"; there is no double jeopardy prohibition precluding the appeal of the Law Division's reversal of defendant's conviction in municipal court, and "an important public interest" would be promoted were the appeal permitted to go forward.
Defendants were found guilty in the Mendham Municipal Court of violating a zoning ordinance, Art. IV, Sec. 215-13, which appellant believes proscribes the boarding of horses as a commercial use or "commercial enterprise" in a five acre zone. They were each fined $50 and ordered to pay $25 in court costs. Each was also directed by the municipal court judge to "remove" the horses from the property within ninety days.
The ordinance provides, in part:
§ 215-13. Uses permitted.
In the 5-Acre, 3-Acre, 1-Acre and ½-Acre Residence Zones, no building or land shall be used and no building or structure shall be erected, constructed, reconstructed, altered or repaired which is arranged, intended or designed for any use or occupancy except for the following:
A. One single-family dwelling per lot which shall include any use of single-family dwellings protected by statute. [Amended 6-15-1998 by Ord. No. 14-98]
B. Playgrounds and parks.
*952 C. Agricultural uses.
D. Home Occupations.
E. Accessory uses.
F. Conditional uses.
The ordinance further defines "agriculture" as follows:
AGRICULTUREThe growing of crops; raising or breeding of horses, sheep, dairy, poultry or other farm livestock; orchard, woodlot, reforestation, nursery or greenhouses; or other agricultural purposes. "Agricultural land" shall include open or wooded areas, ponds, brooks, swamps and meadows.
The complaint was signed by the Mendham zoning officer and was prosecuted by the Mendham municipal prosecutor based on stipulated facts.[1] The "stipulations" of fact were as follows:
1. Since June 1998, defendants have been the owners and residents of property located as 135 Talmadge Road, Mendham Borough, New Jersey ("property"). Defendants are husband and wife.
2. The property consists of approximately 12 acres constituting two separately shown parcels on the Mendham Borough Tax Map as Lot 5.01 and Lot 5 in Block 2101.
3. Lot 5.01 is 5.004 acres in size and contains a barn and fenced-in pasture area that existed at the time defendants purchased the property. The barn is designed for the keeping of horses, and is several decades old.
4. Lot 5, consisting of 6.92 acres, has structures including a residential house, a carriage house, and a garage.
5. The property is located within a 5 Acre Residential Zone as that Zone is defined under Mendham Zoning Ordinance § 215-13.
6. Defendants currently have four horses on the property. Defendants do not own the horses. The horses are owned by Maribeth Thomas.
7. The horses are allowed to remain at the barn free of charge. However, their owner does reimburse defendants for grazing and haying at the property for approximately $700 per year to the extent that the horses do eat the grass and hay found at the property.
8. Defendants have recently filed a Farmlands Assessment Act application for exemptions. In their application, defendants assert the sale of $2,600 in eligible agricultural products.
9. Attached hereto as Exhibit "A" are five letters constituting the entirety of communications between defendants and the Mendham Borough Zoning Officer, which preceded the complaint, as pertained to the nature of allegations that defendants' keeping the horses at the property is allegedly a violation of the Mendham Zoning Law.
Defendants' trial de novo in the Law Division was prosecuted by the Mendham Borough Attorney. The Law Division judge found defendants were engaged in "an agriculture use," not "boarding of horses," and found defendants not guilty.[2] He concluded:
THE COURT: The property owner is receiving the benefit of those horses eating *953 what he's producing, which is clearly an agricultural use.
The State determined "not [to] pursue an Appeal." Isko's counsel then filed a motion in the Law Division, seeking an order permitting his counsel "to act as the Municipal Prosecutor" in order to file an appeal in this court. In denying the application, Judge Reginald Stanton concluded that:
This case is a quasi-criminal proceeding. In constitutional terms, it's a criminal proceeding, period, which originated in the Municipal Court, in the Borough of Mendham. There was a conviction obtained in the Borough of Mendham. Thereafter, there was an appeal taken by the defendants from that conviction and the appeal brought the case to the Law Division of the Superior Court where there was not an appeal in the normal sense, in the normal Appellate Law sense conducted, but there was instead a trial de novo on the record below. So the Superior Court Judge in the Law Division who heard the case dealt directly with the facts and made original findings and original inferences with respect to them.
....
There is also another thing to be kept in mind, there are facts and there are inferences from facts. And inferences grown from facts are fact-finding. And in this case, Judge Conforti sitting in the Law Division drew certain inferences from the facts which were stipulated and which he accepted, and those inferences resulted in a factual finding that the ordinance had not been violated.
....
The State cannot appeal because of constitutional prohibitions on double jeopardy from a finding of innocence based upon an interpretation of the facts in a criminal case. It is true that there are certain circumstances where a Court, where an appeal can be taken by the State in a criminal case, but those instances are very limited. They are set forth in Rule 2:3.1;....
... And all of the other instances where the State can appeal do not involve a case where the Court, sitting as a trier of fact makes a determination adverse to the State on the merits of the case. And that is what has occurred here. So it is simply not appealable.
Judge Stanton alternatively noted that the prosecutor has the discretion to prosecute a quasi-criminal matter, and that the decision not to appeal was part of the exercise of that discretion by a public official. He said:
Now, in this case, we did not have a public prosecutor who took an inappropriate hands-off view and said, we just don't do citizens' complaints. The Prosecutor did take this case. The Prosecutor prosecuted the case at the Municipal Court level, and when an appeal was taken from that, the Public Prosecutor prosecuted the case at the Law Division level. And when that ended with the decision adverse to the State, the Public Prosecutor decided not to go any farther for two reasons, first, because he correctly concluded that there's no such thing as appealing something like this; but, secondly, he concluded, after consulting with the public entity involved; namely, the municipal governing body, that it was not in the public interest to pursue this matter any further, even if it were pursuable. That kind of decision is one that should never be disturbed by a court.
Finally, Judge Stanton suggested that State v. Storm, 141 N.J. 245, 661 A.2d 790 (1995) (and R. 7:8-7(b)) did not apply to the initial appointment of a "special prosecutor" after defendant's successful trial de novo. He said:

*954 The case is not appealable and even if it were appealable, this is not a situation where a private prosecutor is appropriate because a public prosecutor has become involved in the case and has made a decision in the public interest with respect to this case. Not a hands-off decision, but a hands-on justice-oriented decision that the case should not go forward.
We need not decide whether a "private" or "special prosecutor" can be substituted after a defendant's successful appeal to the Law Division. See R. 3:23-9 regarding municipal appeals to the Law Division. Nor need we decide if R. 7:8-7(b) can be implemented for the first time on appeal after the State's attorney declines to pursue the matter, or whether a disposition of a non-indictable "quasi-criminal" matter favorable to a defendant on grounds which do not preclude appeal as a matter of constitutional law is cognizable in this court under our rules of practice and procedure.[3] The parties agree that these issues are academic if the doctrine of double jeopardy would preclude an appeal in this case from the Law Division judgment, and we so conclude.
In State v. Barnes, 84 N.J. 362, 420 A.2d 303 (1980), the Supreme Court applied federal double jeopardy principles to the appealability of a non-indictable offense following the disposition of a trial de novo. See Barnes, supra, 84 N.J. at 367-72, 420 A.2d 303; State v. Costello, 224 N.J.Super. 157, 539 A.2d 1258 (App.Div.), certif. denied, 111 N.J. 596, 546 A.2d 519 (1988). See also, e.g., United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (appeal permitted where disposition during trial not related to guilt or innocence); Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (erroneous exclusion of evidence resulting in acquittal non-appealable). Because an ordinance prosecution in New Jersey is subject to double jeopardy protection, and our state constitution is co extensive with the federal constitution with respect to multiple prosecutions, see, e.g., State v. Barnes, supra, 84 N.J. at 370, 420 A.2d 303, this appeal is precluded by principles of double jeopardy.
There is no doubt that this case involving an ordinance violation, commenced on municipal court summons and in which the State acknowledged its burden beyond a reasonable doubt, is a quasi criminal matter. State v. Schad, 160 N.J. 156, 171, 733 A.2d 1159 (1999); State v. Barnes, supra, 84 N.J. at 365, 420 A.2d 303; State v. Yaccarino, 3 N.J. 291, 295, 70 A.2d 84 (1949); State v. Weir, 183 N.J.Super. 237, 241-43, 443 A.2d 773 (App.Div. 1982); see also State v. Widmaier, 157 N.J. 475, 489-500, 724 A.2d 241 (1999). Thus, because the Law Division concluded the matter on the merits in favor of defendants, and an appeal by the State is precluded, State v. Widmaier, supra, 157 N.J. at 491, 724 A.2d 241; State v. Barnes, supra, 84 N.J. at 371, 420 A.2d 303; State v. Gerstmann, 198 N.J.Super. 175, 179-80, 486 A.2d 912 (App.Div.1985), the question of Isko's right to pursue the appeal became academic.
Appellant argues that because there was a stipulation of facts, there is no need upon reversal for a "new trial" before a fact finder. Appellant also contends that there is no jeopardy preclusion because the municipal *955 appeal was not really "de novo" and the legal question can be decided on the stipulated facts without a "retrial."
United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), allows the government to appeal when a reversal would not require a retrial, and Wilson applies to bench trials, United States v. Rose, 429 U.S. 5, 97 S.Ct. 26, 27, 50 L.Ed.2d 5, 7 (1976); United States v. Morrison, 429 U.S. 1, 3, 97 S.Ct. 24, 26, 50 L.Ed.2d 1, 4 (1976).[4]
But this case is nevertheless barred by principles of double jeopardy because jeopardy attached when the case was submitted on stipulated facts and terminated in favor of defendant by the fact-finder on trial de novo, based on a determination that defendant was innocent or not guilty. Barnes, supra, 84 N.J. at 371-72, 420 A.2d 303. See also Finch v. United States, 433 U.S. 676, 677, 97 S.Ct. 2909, 2910, 53 L.Ed.2d 1048, 1050-51 (1977), which barred an appeal from a dismissal based on stipulated facts. The ruling here "whatever its label, actually represents a resolution [by the fact-finder], correct or not, of some or all of the factual elements of the offense charged." United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642, 651 (1977).
We recognize that Finch may be outdated with respect to appealability when the disposition in the trial court is not related to fact-finding or guilt or innocence.[5] Nevertheless, Finch must still be read for the proposition that jeopardy attaches when a case is submitted on stipulated facts. See United States v. Finch, 548 F.2d 822, 824-25 (9th Cir.1976), vacated on other grounds sub nom. Finch v. United States, supra, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977). Accordingly, when a trial judge decides a case submitted on stipulated facts based on evidentiary insufficiency or innocence, it is not appealable. Gooding v. Stotts, 856 F.Supp. 1504, 1508 (D.Kan.1994), aff'd, 54 F.3d 787 (10th Cir.1995).
We share Judge Stanton's concerns regarding whether R. 7:8-7(b) would permit the substitution of private counsel for the first time after an unsuccessful municipal appeal and whether such substitution should be permitted to prosecute appeals to or from the Law Division when the appropriate prosecuting attorney exercises his discretion and concludes that an appeal is unwarranted. In light of our disposition, however, we need not pursue the question.
The judgment is affirmed.
NOTES
[1] We do not comment herein on the propriety of a trial on stipulated facts in the manner done here. See generally In re T.M., 166 N.J. 319, 765 A.2d 735 (2001).
[2] The judge said he "reverse[d] the conviction," although the trial was de novo. See R. 3:23-8(e). New Jersey's two-tier system generally requiring de novo fact-finding on the record, R. 3:23-8(a), is unique in many respects. See, e.g. Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); Colten v. Commonwealth of Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).
[3] R. 3:24(b) permits the State to appeal to the Law Division from final judgments in certain instances. That rule does not employ language similar to R. 2:3-1, which essentially permits appeals co-extensive with double jeopardy preclusions. See State v. Lefkowitz, 335 N.J.Super. 352, 762 A.2d 323 (App.Div. 2000), certif. denied, 167 N.J. 637, 772 A.2d 938 (2001). Moreover, R. 2:3-1, permitting appeals by the State in "criminal action[s]," does not include specific reference to quasi criminal or ordinance violations.
[4] The appeals in Morrison and, by reliance on Morrison, Rose were dismissed based on United States v. Jenkins, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). See footnote 5, infra, regarding the impact of the overruling of Jenkins by United States v. Scott, supra, 437 U.S. at 87, 98 S.Ct. at 2192, 57 L.Ed.2d at 71.
[5] Finch was decided before Scott "overruled" United States v. Jenkins, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), which precluded appeals from dispositions during trial in situations which Scott would now permit. See Scott, supra, 437 U.S. at 101, 98 S.Ct. at 2199, 57 L.Ed.2d at 80-81. However, this case embodies a disposition which Scott (as well as Jenkins ) would preclude the State from appealing. See generally United States v. Scott, supra, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); United States v. Jenkins, supra, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). While we agree with the Seventh Circuit that "Scott overruled Finch along with Jenkins." United States ex rel. Young v. Lane, 768 F.2d 834, 839 (7th Cir.1985), that fact relates to appealability, not whether jeopardy attached with the disposition upon stipulated facts.