281 N.J. Super. 251 (1995)
657 A.2d 445
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WARREN H. BENAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 1995.
Decided March 16, 1995.
Before Judges PRESSLER and LANDAU.
John P. Libretti, attorney for appellant.
*252 John J. Fahy, Bergen County Prosecutor, attorney for respondent (Susan W. Sciacca, Assistant Prosecutor, of counsel and on the letter brief).
PER CURIAM.
Defendant Warren H. Benas was convicted of a charge of driving while intoxicated, N.J.S.A. 39:4-50, following a trial de novo in the Law Division on the record made in the municipal court. Minimum mandatory penalties prescribed by statute for a first offender were imposed. Defendant appeals, raising the single issue that the trial court erred by admitting the results of the breathalyzer tests administered after his arrest. We affirm the judgment of conviction.
We note at the outset that this conviction was based primarily on the breathalyzer test, whose two readings were .10 and .11, and hence that the validity of the conviction depends on the admissibility of those results. It is also clear that in order for the results to be admissible, the State must establish that the test was properly administered, and proof of proper administration "includes full proof that the equipment was in proper order, the operator qualified and the test given correctly...." State v. Johnson, 42 N.J. 146, 171, 199 A.2d 809 (1964). See also Romano v. Kimmelman, 96 N.J. 66, 90, 474 A.2d 1 (1984). Defendant contends that the breathalyzer machine used here was not adequately demonstrated to have been in proper working order because the State did not prove that the simulator solution used by the State Police coordinator in testing the machine prior to issuing his inspection certification was of the correct concentration. We reject that contention.
Defendant relies on the expert testimony of a former State Police officer, David Ditze, who has extensive experience in and knowledge of breathalyzer machine testing. We consider that testimony in the context of the role of the simulator solution in the breathalyzer process.
*253 In State v. Maure, 240 N.J. Super. 269, 275-277, 573 A.2d 186 (App.Div. 1990), affd. o.b., 123 N.J. 457, 588 A.2d 383 (1991), Judge Baime explained the function of the simulator solution in testing the machine and its relationship to the ampule used in the administration of the breathalyzer test. The test ampule is a sealed cylinder containing the chemical solution of potassium dichromate, silver nitrate, and sulfuric acid whose reaction with alcohol vapor is the basic predicate of the breathalyzer's operation. In the actual performance of the breathalyzer test, the subject blows into the machine, and if there is alcohol vapor in his breath, it will react with the potassium dichromate in such a way as to fade the color of the solution. The shades of color are detected by a photoelectric cell which transmits that information for translation into the meter reading. The paler the color, the higher the breathalyzer reading.
Key to the proper operation of the machine, therefore, is the proper constitution of the chemical solution in the ampule. In order to assure the chemical accuracy of the ampules used in the breathalyzer process, they are required to be certified by an independent testing laboratory. The laboratory procedure is to randomly test twenty-five of the ampules of each batch made by the manufacturer, a batch consisting of 25,000 ampules. A copy of the laboratory's assay certificate, issued when it is satisfied that the test ampules meet the required chemical standards, accompanies each box of twenty-five ampules from the same batch sent by the manufacturer to the ultimate user. Thus the ampules have already been certified both when they are used in the required periodic testing of the machine by the State Police coordinator and in administering the actual breathalyzer test.
As part of the procedure followed during the inspection, the coordinator tests the machine by using a simulator solution instead of the test subject's breath. As Judge Baime explained, the simulator solution has an actual alcohol content of .12, producing an alcohol vapor of .10. The breathalyzer machine is regarded as being in proper working order when introduction of the simulator solution into the machine in which an ampule has already been *254 placed produces a reading of .09 to .105. The reason for this range, required by applicable guidelines, is to account for "a potential variance of .005 attributable to alcohol depletion [of the simulator solution] with successive testing." 240 N.J. Super. at 277, 573 A.2d 186. Finally, as described by Maure, the simulator solution is "maintained at a constant temperature and, by way of an agitator, kept at an appropriate homogeneous concentration...." Id. at 276, 573 A.2d 186. The certificate of inspection given by the coordinator attests to the proper performance of the inspection procedures.
The thrust of Ditze's testimony was that after repeated successive use of the simulator solution, that is, after fifty tests or more, the extent of alcohol depletion may be more appreciable than contemplated by the guidelines. He opined, for example, that if the alcohol content of the vapor were reduced to, hypothetically, .085, it would be possible that a breathalyzer reading within the acceptable range might be produced during testing of the machine by a concentration in the simulator solution below .09. He further hypothesized that if the coordinator made excessive use of the same simulator solution, a skewed reading obtained on testing the machine might also result when the machine was thereafter used to test a suspect.
Both the municipal court judge and the Law Division judge rejected defendant's contention that Ditze's testimony supported a finding that the breathalyzer results in this case were unreliable. We agree. We note first that Ditze never explained how a less concentrated simulator solution used in the testing of the machine could distort actual test results. That is to say, as we understand how the simulator solution works, it will ordinarily produce the same reading as its actual alcohol content since that is the vapor that is being tested. Thus, if as a result of alcohol depletion, the concentration decreased to .085, that is what the reading of the machine would be, and a certificate of inspection would not be given because the reading would then be below the acceptable bottom of the range. Indeed, as we have pointed out, the reason *255 for the range in the first place is to account for some alcohol depletion. As we understand Ditze's testimony, the alcohol depletion of the simulator solution could produce an inaccurate reading, resulting in the certification of a defective machine, only if there were some other unidentified and purely speculative different problem with the machine, undetected by the coordinator, and having the capacity, in combination with a depleted alcohol content, to yield a higher reading than the actual alcohol content of the simulator solution. Ditze did not, however, suggest what those problems could possibly be. Thus we view his testimony as entirely speculative.
Beyond that, Ditze also testified that a coordinator ordinarily tests between thirty and thirty-six machines a day. There was nothing in his testimony to suggest that a coordinator reuses the same solution day after day. But even if he did, the fact remains that the breathalyzer reading he obtained when he tested the machine would ordinarily tell him if the solution were overly depleted.
Maure effectively put to rest challenges to the test ampules as a productive basis of attacking the reliability of breathalyzer results. It is not surprising that the next area of challenge is to the tests of the tests of reliability. But, as we said in Maure, supra, 240 N.J. Super. at 283, 573 A.2d 186, "[t]hese tests must end somewhere...." In any event, we regard the expert testimony here as insufficient to support a viable attack on the reliability of the machine based on a hypothesized alcohol depletion of the simulator solution used in testing it.
The judgment of conviction is affirmed.