281 N.J. Super. 538 (1995)
658 A.2d 1299
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TODD SLINGER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1995.
Decided May 22, 1995.
*539 Before Judges STERN, KEEFE and HUMPHREYS.
Richard H. Kress argued the cause for appellant.
Robert A. Suarez, Assistant Prosecutor, argued the cause for respondent (Andrew K. Ruotolo, Jr., Union County Prosecutor, attorney).
The opinion of the court was delivered by KEEFE, J.A.D.
The issue on appeal is whether the State's failure to prove the number of times a simulator solution has been used and the actual readings obtained by the State Police Coordinator when the breathalyzer was tested goes to the admissibility of the breathalyzer readings or to the weight of the evidence.
Defendant Todd Slinger was found guilty in the Fanwood Municipal Court of driving while under the influence of alcohol in violation of N.J.S.A. 39:4-50. His de novo appeal to the Law *540 Division also resulted in a conviction for that offense. Because this was defendant's third such conviction, he was sentenced to a ten year suspension of driving privileges and other appropriate fines and penalties. A mandatory jail term was not imposed because defendant was not advised of his right to counsel when he pled guilty to his first offense.
On appeal to this court, defendant presents two issues.
POINT I IT IS REVERSIBLE ERROR TO ADMIT EVIDENCE OF BREATHALYZER RESULTS ABSENT A CERTIFICATE OF ANALYSIS OF THE .10 PERCENT BREATH ALCOHOL SIMULATOR SOLUTION.
POINT II IN THE ABSENCE OF THE IMPROPERLY ADMITTED BREATHALYZER RESULTS, THE RECORD ESTABLISHED AT TRIAL DOES NOT SUPPORT A JUDGMENT OF CONVICTION FOR DRIVING WHILE INTOXICATED.
We disagree with defendant's contentions and affirm for the reasons stated herein.

I
Defendant's argument on the first issue is largely based on the testimony of his expert, Richard Saferstein, who was the chief forensic scientist for the New Jersey State Police between 1970 and 1991 when he retired. Saferstein testified that, in 1990, the State decided to purchase the simulator solution used by the State Police coordinators to test breathalyzers rather than have the coordinators prepare the solution themselves as they had done in the past. The solution was packaged in 500 milliter plastic bottles. In order to guaranty the integrity of the testing process, Saferstein was responsible for instituting a procedure whereby the State Police Laboratory would analyze each batch of solution as received from the manufacturer, and then issue a certificate of analysis verifying that the solution was properly constituted. The actual numerical value of the alcohol found in the solution upon testing was listed on each certificate. The certificate, in his view, was the necessary starting point in determining whether the breathalyzer in question was properly calibrated.
*541 In this case, the State did not offer the certificate of analysis into evidence. Instead, the coordinator's certificate, reflecting an inspection of the breathalyzer before and after the date of the offense, was offered to prove that the machine was in proper working order at the time defendant was tested. Defendant maintains that the coordinator's certificate, standing alone, is insufficient to satisfy the first prong of the State's burden under Romano v. Kimmelman, 96 N.J. 66, 474 A.2d 1 (1984). We disagree.
In State v. Maure, 240 N.J. Super. 269, 573 A.2d 186 (App.Div. 1990), aff'd o.b., 123 N.J. 457, 588 A.2d 383 (1991), we found that "the procedures employed by the State Police are reasonably reliable" and that coordinators' certificates were admissible to prove the State's compliance with the Romano requirements. Id. at 283, 573 A.2d 186. Although that case addressed certificates of analysis in connection with the use of the ampoules used in testing rather than the simulator solution, we see no valid distinction between the two concepts. In this case, the coordinator's certificate identified the simulator solution batch number, and the strength of the simulator solution. Similar reference to the batch number and certificate of analysis was found to be satisfactory in the context of test ampoules in Maure, id. at 285, 573 A.2d 186, and there is no reason to follow a different course here. Cf. State v. Benas, 281 N.J. Super. 251, 657 A.2d 445 (App.Div. 1995) (holding that the State need not prove that the simulator solution was itself tested to determine whether, at the time of the issuance of the inspection certificate, the solution was of correct concentration).
Saferstein also testified that there is a "procedural" flaw in the coordinator's testing procedure. The flaw could be eliminated if the coordinator was required to record the number of times the simulator solution was used and the actual test results from his various tests, rather than merely stating in the certificate that the tests were "within acceptable tolerances."
Coordinators are instructed not to use a simulator solution more than fifty times. Saferstein had no reason to believe that the *542 coordinator in this case violated that procedure. However, he opined that the alcohol percentage in the solution begins to deplete after thirty uses, and will deplete to an alcohol level of .09 by the fiftieth use. A coordinator is permitted to certify that a breathalyzer is working within acceptable tolerances if the reading he obtains is within "the range of .09 to .105 percent." Thus, if a coordinator in testing the machine obtains a result of .105 percent, but has used a simulator solution that has depleted to a .09 concentration through use in obtaining that reading, the machine has an error of "plus .015 percent." The significance of such an error is that in a case as this, where the breathalyzer readings were a .10 and a .11, the .11 reading "could actually be as low as .095." Saferstein, and other experts, would be able to tell if a calibration error in the machine exists in such cases only if coordinators are required to log the number of times the solution has been used, and the actual test readings obtained during the inspection are provided.
A fair reading of Saferstein's testimony leads us to the conclusion that he finds nothing wrong, in general, with the established State Police procedure permitting up to fifty uses of the simulator solution, or a calibration range between .09 and.105 as within acceptable tolerances. Thus, the coordinator's certificate, which verifies that established testing procedures have been followed, is sufficient to satisfy the State's burden of proving that the breathalyzer has been appropriately tested for accuracy.
To the extent that the coordinator's certificate does not answer all the questions necessary to decide whether the readings obtained as to a given defendant are accurate in those limited cases where the reading is .11 or less, testimony may be taken on the subject, as was done here. Maure, supra, 240 N.J. Super. at 283, 573 A.2d 186 (Admitting the coordinator's certificate as prima facie proof of compliance with Romano does not mean that "the reliability of the breathalyzer readings cannot fairly be challenged at trial."). However, such testimony, as was given in this case by *543 Saferstein, goes to the weight of the State's proofs, not the admissability of the coordinator's certificate.

II
Law Division Judge Burton J. Ironson also found that defendant violated N.J.S.A. 39:4-50 "[i]ndependent of the breathalyzer results[.]" See State v. Sisti, 209 N.J. Super. 148, 151, 506 A.2d 1307 (App.Div. 1986) (approving alternative finding of intoxication without reliance on breathalyzer). His finding was based upon the observations of the arresting police officer. Judge Ironson found that the defendant's performance on the videotape was insufficient to "dispel the physical observations that [the arresting officer] made earlier that evening[.]" Further, the Law Division judge, as did the municipal court judge, found the officer's observations to be credible. Indeed, as defendant points out in his brief, "much of the facts surrounding the circumstances of the arrest ... were stipulated."
Given our standard of review, we are satisfied that there was sufficient evidence in the record from which the trier of fact could have found defendant guilty beyond a reasonable doubt. State v. Johnson, 42 N.J. 146, 199 A.2d 809 (1964). Defendant's erratic driving, his physical appearance, demeanor, and speech, as well as the smell of alcohol on his breath were sufficient reliable indicia to allow the officer to come to that conclusion. We reject defendant's argument that his performance on the videotape shows that he was only slightly impaired. To be guilty of a N.J.S.A. 39:4-50 violation, "[i]t is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected." Id. at 165, 199 A.2d 809 (quoting State v. Emery, 27 N.J. 348, 355, 142 A.2d 874 (1958)). That standard has clearly been met in this case.[1]
Affirmed.
NOTES
[1] The videotape was not furnished to this court for independent review.