864 A.2d 1122 (2004)
374 N.J. Super. 332
STATE of New Jersey, Plaintiff-Respondent,
v.
Corey ASHFORD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 2004.
Decided December 20, 2004.
*1123 Venturi & Saunders, New Brunswick, attorneys for appellant (Jack Venturi, of counsel and on the brief).
Respondent did not file a brief.[1]
Before Judges STERN, S.L. REISNER and GRAVES.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant appeals from his convictions for the disorderly persons offense of contempt, N.J.S.A. 2C:29-9(b), and criminal mischief, N.J.S.A. 2C:17-3a(1),[2] in the Family Part.[3] Both carry maximum custodial sentences of six months imprisonment. See N.J.S.A. 2C:43-8.
The proofs at the trial reveal that a temporary restraining order (TRO) was entered prohibiting defendant from any "contact" with his former girlfriend, L.M., who did not testify at the trial. Defendant was served with a copy of the TRO on January 28, 2003. Nevertheless, on February 1, 2003, defendant was allegedly observed by L.M. breaking a window and trying to enter her apartment. The police were called and Officer Jeffrey Marino responded to the scene. He described L.M. as "upset" and "crying." The following colloquy was developed by the prosecutor:
Q. Okay. And when you saw [L.M.], who appeared to be upset and crying what, if anything, did you say to her, and what, if anything, did she say?
A. I asked her, you know, what had happened, and she just relayed to me the information.
Q. What did she say to you specifically?
A. She said that Corey Ashford, her ex-boyfriend, with whom she had a restraining order against had come there, started arguing with her from the outside, yelling, you know, at her from outside the apartment. They got into an argument with him being outside, her being inside. She said she refused to open the door and he got angry and *1124 smashed a window. She didn't know with what. There's a window next to the door. It's a first floor apartment.
Q. Okay. And what, if anything, did you observe?
A. There was broken glass on the ground outside the window. It was a double pane window, and only the outer pane was broken, so no glass went inside the apartment. The glass was on the ground below the window.
Q. Did she indicate to you when this incident with Mr. Ashford had happened?
A. She said right before we  he left right before we got there.
Officer Marino further testified that he arrived on the scene in two minutes after the offense occurred.
The following testimony was further developed by the judge with Marino:
THE COURT: I just want to make sure the record was clear. My understanding, Officer, was almost immediately after the events occurred you got to the scene 
THE WITNESS: Yes.
THE COURT: And she was visibly still upset as a result of the incident?
THE WITNESS: Yes, she was.
THE COURT: And you testified that she had someone else there at that time calm her down or being with her. Is that right?
THE WITNESS: Yes.
THE COURT: She was crying?
THE WITNESS: It looked like she had been crying, but she wasn't crying then.
THE COURT: All right. And physically appeared to be, in your mind 
THE WITNESS: She was upset. Okay.[4]
In her summation the prosecutor argued the statement was made while L.M. was "still under the stress of a startling event," and the judge found that L.M.'s call to the police and statement to the officer were admissible:
And under [N.J.R.E. 803(c)(2)], the utterance on the telephone, this Court believes to be certainly sufficiently corroborative by the heat of the moment for the Court to give it some weight and some consideration, and will not exclude it. The Court does not necessarily find that in and of itself it would be sufficient, but the Court does find it can be and will be considered.
Upon arrival at the scene within a minute  and I wrote down in my notes, although he later said two minutes, got there within one minute, and the Court finds whether it be a minute or two minutes, it was contemporaneous within the true meaning of the word contemporaneous, the officer finds the victim upset, and my notes reflect and the testimony so reflect crying, with a friend, and said that Corey was there two times, had come, and they had argued, and that he had broken a window when she refused to open the door.
Not only does the Court find that this is statements [sic] being made in the heat of the moment under 803[(c)(2)], excited utterance, the Court finds there's other sufficient corroboration within the context of the statement, which the Court accepts as admissible from the victim. The broken glass, the fact that she had said it earlier, and it didn't change when the police showed up, showing that she did not have the time nor opportunity to deliberately fabricate or to deliberate at all.
*1125 Defendant testified on his own behalf and denied all wrongdoing with respect to L.M. Based on the officer's testimony, along with a finding that defendant's testimony was not credible, the trial court judge found the defendant guilty on both counts.
Defendant was sentenced to the "maximum" sentence of 180 days in jail for the contempt conviction. While it is not entirely clear from the record, it appears that defendant was given a suspended sentence on the charge of criminal mischief or "breaking that window," as it was called by the trial judge. Defendant also appears to have been placed on probation for one year on the criminal mischief offense. The "domestic violence contempt sentencing form," which apparently constitutes the judgment, indicates that defendant was placed on probation for a year with conditions that he obey the final restraining order and serve a six-month suspended sentence and that he was incarcerated for six months on the contempt charge. In light of our disposition, we do not comment on the form or propriety of the sentence.

I.
At the opening of the trial court proceedings of May 30, 2003, the transcript reveals only the following about the issue of counsel:
THE COURT: And Mr. Ashford, are you here?
MR. ASHFORD: Yes.
THE COURT: I guess you'll be representing yourself today, sir?
MR. ASHFORD: Yes.
THE COURT: All right. State.
MS. MURPHY: Your Honor, Ms  we're going to start with the trial now, correct?
THE COURT: Well, Mr. Ashford, you'll be representing yourself. Is that correct, sir?
MR. ASHFORD: Yes.
THE COURT: All right. And you're perfectly comfortable with that. Is that right?
MR. ASHFORD: I just  can I have a brief conversation with the prosecutor? Is that permitted?
THE COURT: Well, that would be up to the prosecutor. She has no obligation to speak to you. I tell you quite frankly, sir, she is the prosecutor. If she chooses to have an investigator present during the discussion anything you say might be used, but you know, that's up to her, not up to me, sir.
MR. ASHFORD: Well, it's alright then. I just want to proceed and get this over with.
THE COURT: Okay. Is there any question you want 
MS. MURPHY: But I just want Mr. Ashford to know I'd be happy to speak with him for a minute or two if he'd like to.
THE COURT: All right. Is there any question you want to ask, sir? We'll go off the record and you can ask the prosecutor.
(Off the record. Back on the record.)
THE COURT: State.
MS. MURPHY: Thank you, Your Honor. We're ready to proceed with the trial.
THE COURT: All right.
This colloquy was not sufficient to advise defendant of his right to counsel or to secure a waiver of that right if he was entitled to the assignment of counsel as an indigent. See State v. Laurick, 120 N.J. 1, 8, 575 A.2d 1340 (1990); State v. Carey, 230 N.J.Super. 402, 408-10, 553 A.2d 844 (App.Div.1989). See also State of N.J. Domestic Violence Procedures Manual § 6.4.4 (2004) (regarding scheduling of contempt cases).
*1126 Defendant appealed to us as an indigent immediately after the conviction and we referred the matter for assignment of counsel. He now appears through a "pro bono" attorney, as counsel calls himself. We can find no order assigning counsel. See R. 2:7-2(b); R. 3:4-2(c). Nevertheless the record suggests that defendant was indigent at the time of trial. See State v. Hermanns, 278 N.J.Super. 19, 27, 650 A.2d 360 (App.Div.1994).[5]
We vacate the judgment of conviction and remand for a new trial. As an indigent, defendant was entitled to the assignment of counsel for purposes of the prosecution. Malden v. Delran Twp., 126 N.J. 591, 601 A.2d 211 (1992); see Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971). The longstanding rule to this effect, applicable in municipal courts, applies to the prosecution in the Family Part of non-indictable offenses when the Family Part exercises its concurrent jurisdiction with respect to those matters.
As the Supreme Court has stated in Rodriguez:
The importance of counsel in an accusatorial system such as ours is well recognized. If the matter has any complexities the untrained defendant is in no position to defend himself and, even where there are no complexities, his lack of legal representation may place him at a disadvantage. The practicalities may necessitate the omission of a universal rule for the assignment of counsel to all indigent defendants and such omission may be tolerable in the multitude of petty municipal court cases which do not result in actual imprisonment or in other serious consequence such as the substantial loss of driving privileges. But, as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost.

Our municipal court judges have had and continue to have broad discretion to assign free counsel to indigent defendants whenever justice so requires. That discretion may be exercised liberally under general guidelines without entailing the feared inundations. When the very charge and the attendant circumstances indicate that the indigent defendant will be in need of the assistance of assigned counsel, he should of course have it. Indeed, whenever the particular nature of the charge is such that imprisonment in fact or other consequence of magnitude is actually threatened or is a likelihood on conviction, the indigent defendant should have counsel assigned to him unless he chooses to proceed pro se with his plea of guilty or his defense at trial. In those rare instances where there is a plea or a trial proceeds without any tender or assignment of counsel and actual imprisonment or other consequence of magnitude looms appropriate to the municipal judge despite the preindications to the contrary, the defendant should be given the option of starting anew with suitable safeguards including, where necessary, *1127 trial before a substituted municipal judge.
[Id. at 295, 277 A.2d 216.] (emphasis added)
Accordingly, the judgment of conviction must be vacated, and the matter is remanded for a new trial with the assistance of assigned counsel if defendant remains indigent and does not retain or waive an attorney.

II.
In light of the remand, we add that, after this matter was tried in the Family Part, the United States Supreme Court has held that an extra-judicial testimonial statement of an "unavailable" witness may not be admitted into evidence merely because it is subject to a "firmly rooted" exception to the hearsay rule and is, therefore, deemed "reliable." The Court held that the Sixth Amendment required actual cross-examination of the declarant, stating that, "[t]estimonial statements of witnesses absent from trial have been admitted only when the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, ___, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177, 197 (2004). "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, supra, 541 U.S. at ___, 124 S.Ct. at 1374, 158 L.Ed.2d at 203.[6]
Given the basis of our reversal under Rodriguez v. Rosenblatt, this is not the occasion to consider the impact and scope of Crawford. This is particularly true because the history and disposition of the numerous domestic violence complaints, as stated by defendant at the time of trial, may suggest that this hearsay was not "reliable," and defendant had no counsel at trial to develop the issue. In any event, the record does not suggest that L.M. was unavailable and cannot, or will not, be called at any retrial.
The judgment of conviction is reversed and the matter is remanded for further proceedings.
NOTES
[1] It appears that the State was never served with defendant's brief. Upon learning that, and independently upon raising the issue on which we now decide this appeal, we wrote to the prosecutor, sent him a copy of the defendant's brief and asked "whether this matter can be returned by stipulation for trial consistent with Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971), and if not, ... your views with respect to the matter." The prosecutor responded by letter dated November 17, 2004, stating that defendant was "undoubtedly competent to waive counsel" and did so in this case, but did not request to file anything further.
[2] See also N.J.S.A. 2C:17-3(b)(2). Notwithstanding the alleged criminal mischief violation, there is no dispute that the contempt was prosecuted as a non-indictable disorderly persons offense.
[3] The case was transferred to the Family Part from a municipal court. No issue was raised before us concerning such transfer. See R. 3:1-6; R. 5:1-3(b).
[4] At the outset of the proceedings defendant made an objection which led the judge to say he would "listen very carefully to the testimony because you will be objecting to my considering it unless it comes from the mouth of the person who actually made the statement."
[5] In order to be thorough, we endeavored through the clerk to find any relevant orders at the trial and appellate levels, and were advised that the record contained a letter from the prosecutor referring to proceedings of March 27, 2003, at which defendant indicated he "did not want to have an attorney." We listened to a tape of that brief proceeding at which the prosecutor indicated that defendant initially reported he requested a trial but did not want counsel assigned. However, in response to questions from the judge, the defendant ultimately stated "I'll take a lawyer," and defendant was requested to complete the indigency forms. The judge stated he would assign counsel, and there is no subsequent indication in the record that defendant did not qualify.
[6] While the Sixth Amendment applies to "criminal prosecutions," we have applied certain provisions or given similar protections to non-indictable prosecutions. See, e.g., Rodriguez v. Rosenblatt, supra, 58 N.J. at 294-295, 277 A.2d 216 (State right to counsel on non-indictable charges broader than subsequently developed federal right under Argersinger v. Hamlin, 407 U.S. 25, 37-38, 92 S.Ct. 2006, 2012-13, 32 L.Ed.2d 530 (1972)); cf. State v. Tropea, 78 N.J. 309, 314-16, 394 A.2d 355 (1978).