885 A.2d 969 (2005)
381 N.J. Super. 326
STATE of New Jersey, Plaintiff,
v.
Paul GODSHALK, Defendant.
Superior Court of New Jersey, Law Division, Criminal Part, Camden County.
Decided May 26, 2005.
*970 Leo Feldman, Assistant Camden County Prosecutor, for plaintiff.
John Ferzetti, for defendant.
COOK, J.S.C.

INTRODUCTION
Paul Godshalk appeals his March 9, 2005 conviction in Pennsauken Township Municipal Court for driving while Intoxicated (DWI) on October 17, 2004, a per se violation of N.J.S.A. 39:4-50(a)(1)(i) (operation of a motor vehicle with a blood-alcohol concentration of 0.08% and less than 0.10%). Penalties, costs and surcharges totaling $614 were imposed, as well as ninety days driver's license suspension, and detention at the Intoxicated Driver's Resource Center (IRDC) for twelve hours.

TRIAL DE NOVO STANDARDS
A trial de novo was conducted by this Court on the evidentiary record in the Municipal Court proceedings. R. 3:23-8(a). The evidentiary record consists of the testimony of Pennsauken Patrolmen Frank Sabella and Shawn Sampson, and the following exhibits: Sampson's breathalyzer operator certificate; breathalyzer machine inspection certificates for the Pennsauken Police Department breathalyzer machine, dated October 8, 2004 and December 10, 2004; and Sampson's alcohol influence report, dated October 17, 2004.
This court is bound by the evidentiary record before the Municipal Court. Its function is to determine the case completely anew on the record made in that court, giving due although not necessarily controlling regard to Municipal Court Judge Piperno's opportunity to assess the credibility of the witnesses. Additionally, this Court must make its own findings of fact. Middlesex County Dep't of Health v. Importico, 315 N.J.Super. 397, 406, 718 A.2d 727 (Law Div.1998) (citations omitted). As Judge Pressler observed in State v. Ross, 189 N.J.Super. 67, 75, 458 A.2d 1299 (App.Div.1983):
A trial de novo by definition requires the trier to make his own findings of fact. He need, furthermore, give only due, although not necessarily controlling, regard to the opportunity of the municipal court judge to judge the credibility of the witnesses. His is not the appellate function governed by the substantial evidence rule but rather an independent fact-finding function in respect of defendant's guilt or innocence. See, e.g., State v. States, 44 N.J. 285, 293, 208 A.2d 633 (1965); State v. Johnson, 42 N.J., 146, 157, 199 A.2d 809 (1964).

*971 THE EVIDENCE

Pennsauken Patrolman Sabella testified. He is a five-year veteran of the department. While patrolling Westfield Avenue on October 17, 2004, around 12:50 a.m., he observed the following event:
I was on patrol on Westfield Avenue and observed a white Cadillac back from a parking lot in the 4900 block of Westfield, onto Westfield Avenue. The vehicle's backing caused several other vehicles that were traveling on Westfield Avenue to stop abruptly to avoid a collision. The same white Cadillac then accelerated at a rapid pace, being north up Westfield Avenue, crossing Browning Road. As it accelerated at the rapid pace it was straddling the center line.
The speed limit for Westfield Avenue traffic is 25 m.p.h.
The Cadillac driver was Godshalk. He backed out of the parking lot onto Westfield at an "abrupt pace", causing two oncoming vehicles to stop abruptly. The vehicles whose path he blocked when he backed out of the lot onto Westfield Avenue, were within a half block when he began that maneuver. Sabella's vehicle was about a block behind those two vehicles. He followed the Cadillac for about one and one-half blocks. The two vehicles between the Cadillac and Sabella turned onto a side street. Now directly behind the Cadillac, he noted that Godshalk was not wearing a seatbelt. He stopped the Cadillac, spoke to Godshalk, requested his driving credentials, and smelled an odor of alcoholic beverage emanating from his breath. When Godshalk looked for his driving credentials, his hands were slow and fumbling, and he had a hard time going through a stack of paperwork to retrieve his driving documents. Based on all these observations, Sabella believed that Godshalk may have been operating his car under the influence of some type of alcoholic beverage.
Sabella radioed for assistance from a "DWI officer". Sampson, a DWI officer, responded. He was trained by State Police in the detection of motorists who are operating a vehicle under the influence of alcohol, and has been trained and certified as a breathalyzer operator. He said the signs that one may be under the influence of alcohol include: the odor of alcohol on one's breath; slurred speech; inability to stand unassisted; bloodshot, watery eyes; slow and fumbling hands; inability to follow simple instructions; and swaying back and forth.
Sampson spoke to Godshalk. His eyes were bloodshot and watery. His face was flushed. Alcoholic beverage odor emanated from his breath. He said he was going home from a bar. He performed the one-leg stand test poorlyhe kept putting his foot down. He performed poorly on the walk and turn/heel-to-toe test. He swayed back and forth, couldn't walk heel-to-toe, walked a crooked path, and didn't walk the requisite number of steps. He performed poorly on the finger-to-nose test. He kept missing his nose, instead touching his chin and upper lip. When reciting the alphabet, he spoke in a slurred voice and skipped the letters "N" and "V". He successfully performed the 1 to 25 counting test; and the Romberg test. Based on his observations of Godshalk, and the latter's overall poor performance on the field tests, Sampson formed the opinion that Godshalk was intoxicated. He transported Godshalk to the station house.
The State proferred the October 8, 2004 and December 10, 2004 "before and after" breathalyzer inspection certifications of Trooper Cross, the State Police officer assigned to inspect the Pennsauken breathalyzer machine. Each certified that the Pennsauken breathalyzer was functioning *972 properly and in proper operating order. Defense counsel objected to the admission of the breathalyzer inspection certificates, asserting that since the State did not produce Cross as a witness at trial, their admissibility was barred under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The objection was overruled.
Sampson testified that he administered two breathalyzer tests to Godshalk. The first test yielded a blood-alcohol concentration of 0.08%. The second test yielded a blood-alcohol concentration of 0.09%. Sampson's Alcohol Influence Report was admitted in evidence. That document records his compliance with all breathalyzer procedures, and the breathalyzer results. The .08% reading was obtained at 1:35 a.m. The .09% reading was obtained at 1:45 a.m. The State rested.
Defense counsel renewed his motion to exclude Cross' breathalyzer inspection certificates, relying on Crawford v. Washington. Judge Piperno denied the motion. Defendant rested. Following arguments of counsel, Judge Piperno found Godshalk guilty of a per se violation of N.J.S.A. 39:4-50(1)(i) (operation of a motor vehicle with a blood alcohol concentration of 0.08% but less than 0.10%).

THE ADMISSIBILITY OF THE "BEFORE AND AFTER" BREATH TESTING CERTIFICATES FOR THE BREATHALYZER USED TO TEST GODSHALK: THE "CRAWFORD" ISSUE
The State Police "Breath Testing Instrument Inspection Certificates" of Cross were proferred by the State to fulfill one "of the three preconditions to the admissibility of breathalyzer evidence, namely that the instrument itself be in proper working order at the time of the [breathalyzer] test[ing] [of the defendant]". State v. Garthe, 145 N.J. 1, 9, 678 A.2d 153 (1996).
As in Garthe, defendant "did not challenge the reliability of the breathalyzer test procedures employed by [The officer]". Id. at 13, 678 A.2d 153. Instead, defense counsel challenged the admissibility of the inspection certificates under Crawford v. Washington, asserting that because the State did not produce Cross at trial, defendant was thereby deprived of his Sixth Amendment right to confront and cross-examine Cross.
In a seminal opinion, the United States Supreme Court ruled In Crawford that the Sixth Amendment right to confrontation bars the use of any "testimonial" out-of-court hearsay statement of a declarant who is unavailable for trial whom defendant did not have a prior opportunity to cross-examine, even if such statement is otherwise admissible under a hearsay exception. The Court held that regardless of the reliability of such "testimonial" out-of-court statements, and their admissibility under hearsay exception rules, "the only indicium of reliability sufficient to satisfy constitutional demands is the one [the Sixth Amendment to] the Constitution actually proscribes: confrontation." Crawford, supra, 541 U.S. at 68-69, 124 S.Ct. at 1374, 158 L.Ed.2d at 203.
The Sixth Amendment applies to "criminal prosecutions." The right to confrontation of adverse witnesses guaranteed by Article 1, paragraph 10 of the New Jersey Constitution, likewise applies to "criminal prosecutions". State v. Ashford, 374 N.J.Super. 332, 338-39, 864 A.2d 1122 (App.Div.2004). The criminal procedural guarantees of the New Jersey Constitution also extend to non-indictable, quasi-criminal prosecutions. Id. at 339 n. 6, 864 A.2d 1122. Such prosecutions would include those for disorderly persons offenses, Id. at 333, 339 n. 6, 864 A.2d 1122; as well as *973 cases involving quasi-criminal charges such as DWI, State v. DiSomma, 262 N.J.Super. 375, 380, 621 A.2d 55 (App.Div.1993); petty disorderly persons charges, State v. Avena, 281 N.J.Super. 327, 339, 657 A.2d 883 (App.Div.1995) (although harassment by offensive touching is a minor offense, it is subject to the same standard of proof required for a crime, i.e., whether the evidence, viewed in its entirety including the legitimate inferences therefrom, is sufficient to enable the trier of fact to find that the State's charge has been established beyond a reasonable doubt); and municipal ordinance violation charges, State v. Carlson, 344 N.J.Super. 521, 527, 782 A.2d 950 (App.Div.2001) (cases involving ordinance violations, commenced on municipal court summonses, are quasi-criminal matters).
However, while the Crawford ban against testimonial out-of-court hearsay statements by an unavailable witness may apply in DWI cases, the Supreme Court specifically excluded business records from the scope of that ban. 541 U.S. at 55-56, 124 S.Ct. at 1366-67, 158 L.Ed.2d at 195-96.
Defendant does not challenge the admissibility of Cross' inspection certificates on any basis other than the Crawford decision. The inspection certificates are in the form approved by and annexed to the New Jersey Supreme Court's opinion in Garthe, supra, 145 N.J. at 13-14, 678 A.2d 153 and Appendix A. They are not within the "testimonial evidence" category of Crawford, because they are business records (and official records) of the New Jersey State Police, and thus are admissible under N.J.R.E. 803(c)(6) and (8). State v. Garthe, at 9, 13-14, 678 A.2d 153; State v. McGeary, 129 N.J.Super. 219, 225, 322 A.2d 830 (App.Div.1974) (cited in Garthe, 145 N.J. at 10, 678 A.2d 153, and holding that there is no basis for conceiving that a State Police Inspector would violate his duty and certify that a breathalyzer was functioning properly when the truth was to the contrary).
Defendant's reliance on Shiver v. State, 900 So.2d 615 (Fla.Dist.Ct.App.2005), as supporting his Crawford argument, is misplaced. There, a Florida trooper prepared a "breath test affidavit" in which he certified that a breathalyzer was tested by another Florida trooper, who was in charge of testing the machine, assuring it was properly maintained and calibrated, and in proper working order. No inspection certificate of the trooper actually assigned to inspect the breathalyzer machine used to test Shiver was produced. In sum, the trooperaffiant was simply attesting to another trooper's assertion that the breathalyzer had been timely and properly maintained. Id. at 618-619. That is not the case here. The certifications in this case are those of the very trooper assigned to inspect the Pennsauken breathalyzer machine, Trooper Cross. Thus, Shiver is inapposite.
Cross' certifications are reliable and trustworthy, and qualify as business records. Since Crawford does not apply to business records, defendant's argument for exclusion of those certifications is without merit.

FINDINGS AND CONCLUSIONS
The testimony of Sabella and Sampson is wholly credible. Their testimony is consistent, uncontroverted, and bears the ring of truth. The coordinator's inspection certificates of Cross satisfy the State's burden of proving that the Pennsauken breathalyzer was appropriately tested for accuracy, and that it was in proper working condition at the time Godshalk was tested. See State v. Benas, 281 N.J.Super. 251, 253-54, 657 A.2d 445 (App.Div.1995) ("[t]he certificate of inspection ... attests to the proper *974 performance of the inspection procedures"); State v. Slinger, 281 N.J.Super. 538, 542, 658 A.2d 1299 (App.Div.1995) (the coordinator's certificate of itself is sufficient to satisfy the State's burden of proving that the breathalyzer has been appropriately tested for accuracy); State v. Maure, 240 N.J.Super. 269, 573 A.2d 186 (App.Div.1990), aff'd d.o.b., 123 N.J. 457, 588 A.2d 383 (1991); State v. Maida, 332 N.J.Super. 564, 570, 753 A.2d 1240 (Law Div.2000). The tests were administered by a qualified operator, Sampson; and the tests were conducted in accordance with accepted procedures. Romano v. Kimmelman, 96 N.J. 66, 82, 474 A.2d 1 (1984).
Accordingly, I find that the State has proven beyond a reasonable doubt that defendant is guilty of a per se violation of N.J.S.A. 39:4-50(a)(1)(i), operation of a motor vehicle with a blood-alcohol concentration of 0.08% and less than 0.10%.